IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Canoo Inc., et. al,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 25-10094 (BLS) |
| WHS Energy Solutions, LLC,<br><br>Plaintiff,<br><br>-against-<br><br>Global Retool Group America LLC and NewLane Finance Company,<br><br>Defendants. | Adv. Proc. No. 25-_____ (BLS) |

## COMPLAINT

WHS Energy Solutions, LLC ("WHS" or "Plaintiff"), by its undersigned counsel, files this Complaint against the above-captioned Defendant and alleges as follows:

### NATURE OF THE ACTION

1. In 2023, Defendant Global Retool Group America LLC ("GRG") contracted to create an automated production line to manufacture doors and fenders for the Canoo Lifestyle vehicle (the "Line"), a vehicle intended to be sold to the general public.

---

[1] The Debtors (collectively, the "Debtors" or "Canoo") in these cases are the following entities, with their respective case numbers in parentheses: Canoo, Inc. (25-10094 BLS); EV Global Holdco LLC (25-10095 BLS); EV US Holdco Inc., (25-10096 BLS); Canoo Technologies Inc. (25-10099 BLS); Canoo Manufacturing (25-10097 BLS); and Canoo Sales, LLC (25-10098 BLS).

2. The Canoo Debtors filed voluntary petitions under chapter 7 of title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on January 17, 2025 (the "Petition Date").

3. Although the Line is complete or substantially complete, it was not delivered to Canoo, and remains in GRG's possession, custody and control.

4. Pursuant to the April 4, 2025 *Order (A) Approving Asset Purchase Agreement and Sale Of The Debtor's Assets Pursuant To 11 U.S.C. § 363, and (B) Granting Related Relief* [Docket No. 141] (the "**Sale Order**") and the asset purchase agreement ("APA") attached thereto, WHS purchased assets from the Debtors' estates, including without limitation, tooling, goods, engineering, designs, and related data, files and equipment in the possession of third parties (collectively, the "Purchased Assets") free and clear of all liens, claims and interests, pursuant to Bankruptcy Code section 363(f). The sale to WHS closed on April 11, 2025. *See Notice of Closing of Sale* [Docket No. 155].

5. Both prior to and following the closing of the sale, WHS and GRG were in contact with each other. They disagree as to the ownership of the Line, and GRG has informed WHS that it intends to proceed to sell it. This action seeks declaratory relief that WHS is the lawful owner of the Line and all related intellectual property, and a judgment that requires GRG to turn over to WHS and account for all Purchased Assets in its possession, custody or control pursuant to the terms of the Sale Order and 11 U.S.C. § 542. Because GRG has threatened to proceed to sell the Line notwithstanding the ownership dispute, WHS also seeks injunctive relief to prohibit GRG from disposing of the Line or any related Purchased Assets pending this Court's determination of the competing claims of ownership.

6. Defendant NewLane Finance Company ("NLFC") has filed a UCC-1 financing statement against GRG in the State of Michigan. The financing statement predates the agreement that led to the creation of the Line, but it purports to cover after-acquired equipment and other personal property, among other things. Accordingly, out of an abundance of caution, WHS seeks declaratory relief against NLFC that WHS' ownership interest in the Line is free and clear of any lien that NLFC may hold, and injunctive relief to ensure that NLFC does not take action to enforce its lien against the property here at issue while this adversary proceeding remains pending.

## JURISDICTION AND VENUE

7. Subject matter jurisdiction over this adversary proceeding exists pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the Amended Standing Order of Reference of the United States District Court for the District of Delaware, dated February 29, 2012.

8. Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. § 1409(a) and (c). This adversary proceeding is related to the above-captioned bankruptcy case pending before this Court under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

9. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(A),(E), and (O).

10. The predicates for the relief sought herein include sections 105(a), 541(a), and 542, Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the federal Declaratory Judgment Act (28 U.S.C. § 2201, et. seq., and applicable state law.

11. Pursuant to Bankruptcy Rule 7008 and Rule 7008-1 of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Delaware, WHS consents to the entry of final orders or judgments by a bankruptcy judge.

12. The District of Delaware has personal jurisdiction over Defendants under Bankruptcy Rule 7004 and/or other applicable law.

## PARTIES

13. Plaintiff WHS is a Delaware limited liability company.

14. Defendant GRG is a Michigan limited liability company with its principal place of business at 7290 Kensington Road, Brighton, Michigan 48116.

15. Defendant NLFC is a New Jersey entity with offices located at 123 S. Broad Street, 17th Floor, Philadelphia Pennsylvania, 19109 and 1818 Market Street, Philadelphia, Pennsylvania 19103.

16. Non-party Jeoffrey Burtch is the chapter 7 trustee (the "Trustee") for the Debtors.

## FACTS COMMON TO ALL COUNTS

17. Prior to the Petition Date, the Debtors were a publicly-held electric vehicle manufacturing company in the startup phase.

18. In 2023, discussions between Canoo and GRG led to proposals from GRG and, ultimately, an agreement by GRG to build the Line for Canoo.

19. In the May 25, 2023 Supplier Engagement Agreement (the "SEA") between GRG and Canoo Technologies Inc. ("Canoo Tech"), a preliminary document pertaining to the construction of the Line, the parties agreed the construction of the Line would be governed by Canoo's terms and conditions. The SEA thus states that GRG's acceptance "will be considered your intent to partner with Canoo for the supply of the assembly equipment design & fabrication, plus units (parts) to Canoo *pursuant to the terms and conditions of this SEA and Canoo Term's and Conditions*." SEA at 1 (emphasis added). Likewise, at page 3, the SEA states that "[f]irm pricing will also be finalized and documented by way of a Supply Agreement between Canoo and Supplier, *which shall incorporate Canoo's General Terms and Conditions for the Purchase of*

4

*Materials and Automotive Components ("T&Cs")*, prior to start of production." (emphasis added) In addition, the SEA states that "[o]nce the design for the parts is released and the Supply Agreement is signed by the parties, *Canoo shall issue one or more Purchase Orders for supply of the Parts and production tool orders to be governed by the T&Cs.*" SEA at 3 (emphasis added). A true and correct copy of the SEA signed by GRG is attached hereto as Exhibit 1.

20. To facilitate GRG's construction of the Line, Canoo provided GRG with significant amounts of its design specifications, preliminary engineering, production requirements and other significant amounts of Canoo's intellectual property.

21. Thereafter, Canoo Tech subsequently issued two purchase orders to GRG covering the Line: (i) Purchase Order 00015235 dated June 23, 2023 and (ii) Purchase Order 00016185 dated December 18, 2023 (together, the "Purchase Orders"). True and correct copies of the Purchase Orders are attached hereto as Exhibits 2 and 3, respectively.

22. The Purchase Orders each state, in pertinent part, as follows:

> Where this purchase order relates to the purchase and supply of automotive systems or components being incorporated into Canoo vehicles, Canoo's General Terms and Conditions for the Purchase of Production Materials and Automotive Components, a copy of which has been provided to Supplier as part of the Request for Quotation packet or is available upon request, and any other duly executed agreement(s) between the Parties, shall apply and are incorporated herein by reference. Where this purchase order relates to the purchase and supply of any other types of goods or services, Canoo's General Terms and Conditions for the Purchase of Goods and Services, which are available at https://www.canoo.com/legal/, or any other duly executed agreement(s) between the Parties, shall apply and are incorporated herein by reference. Capitalized terms not otherwise defined herein shall have the meaning set forth in the operative Terms and Conditions or duly executed agreement(s) between the Parties. Unless otherwise specified by Canoo, any parts purchased shall be imported to the United States as pre-production prototype parts to be used exclusively for development, testing, product evaluation, or quality control purposes and therefore should

be classified as duty-free under the U.S. Harmonized Tariff Schedule.

Ex. 2 at 1; Ex. 3 at 1.

23. The subject matter of the Purchase Orders was the Line. Because the Line was to be a manufacturing system to produce doors and fenders for Canoo vehicles, the Purchase Orders were subject to Canoo's General Terms and Conditions for the Purchase of Production Materials and Automotive Components (the "Direct T&Cs"). A true and correct copy of the Direct T&Cs in effect at all relevant times is attached hereto as Exhibit 4.

24. Section 2(a) of the Direct T&Cs states, in part, that a "Supplier will be deemed to have accepted a Purchase Order as issued by Canoo, where Supplier (i) commences work under the Purchase Order; (ii) accepts the Purchase Order in writing; (iii) or fails to object in writing within ten (10) days of issuance, whichever is earliest." Ex. 4 at 1.

25. GRG commenced work on the Purchase Orders after issuance. GRG did not object to the Purchase Orders in writing within ten (10) days of their issuance (or otherwise). Accordingly, pursuant to their terms, GRG accepted the Purchase Orders.

26. At various times, GRG submitted invoices to Canoo Tech and at various times, payments were made to GRG. As of the Petition Date, Canoo had paid a total of $3,450,000 to GRG.

27. In addition, in November 2024, Canoo Inc. entered an agreement with GRG to issue 2,500,010 shares of stock, with the understanding that GRG could then sell the shares and apply the proceeds to amounts owed under the Purchase Orders. Such shares were issued to GRG after the agreement was signed. Plaintiff is unaware whether or when GRG liquidated its Canoo shares or the amount which Plaintiff may have realized therefrom.

4901-2570-6819, v. 1

28. On information and belief, the Line is complete or substantially complete. GRG has provided pictures and videos to WHS depicting various components of the Line, including a video that shows the Line is functional. Attached hereto as Exhibit 5 is a copy of a picture of the Line sent by GRG to WHS.

29. On or about March 29, 2022, Defendant NLFC filed a UCC financing statement against GRG with the Michigan Department of State. The filing, a true and correct copy of which is attached hereto as Exhibit 6, purports to cover "[a]ll equipment and other personal property, now or hereafter the subject of the certain Equipment Finance Agreement…between Lender and Borrower…" Ex. 6.

**FIRST COUNT – DECLARATORY JUDGMENT (OWNERSHIP OF LINE)**
**Pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001 (All Defendants)**

30. The allegations set forth in the previous paragraphs are incorporated herein by reference as if set forth at length.

31. Pursuant to Section 8(a) of the Canoo Direct T&Cs, all Tooling "shall be and remain the sole and exclusive property of Canoo…and shall be held by Supplier on a bailment basis until such time as it is transferred to Canoo…"

32. The Line constitutes "Tooling" within the meaning of the Purchase Orders, the Direct T&Cs, and under the generally accepted automotive industry standards, because the Line was created to manufacture parts for Canoo vehicles.

33. Pursuant to the APA and Sale Order, the Line constitutes "Purchased Assets" that are now owned solely by WHS. Neither GRG nor NLFC have any ownership right, lien or other interest in the Line.

34. WHS is therefore entitled to a declaratory judgment that WHS owns the Line and that GRG and NLFC have no interest therein.

**SECOND COUNT – DECLARATORY JUDGMENT (INTELLECTUAL PROPERTY)**
**Pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001 (All Defendants)**

35. The allegations set forth in the previous paragraphs are incorporated herein by reference as if set forth at length.

36. Pursuant to Section 8 of the Canoo Direct T&Cs, all intellectual property relating to the Line, whether delivered by Canoo to GRG or developed by GRG as part of its work to fabricate the Line, was Canoo's property.

37. Upon information and belief, GRG is in possession, custody or control of data, inventions (whether or not patentable), engineering, industrial designs, technical information, know-how, processes of manufacture and other intellectual property and information pertaining to the Line (the "Intellectual Property").

38. Pursuant to the APA and Sale Order, the Intellectual Property constitutes "Purchased Assets" that are now owned solely by WHS. Neither GRG nor NLFC have any ownership right, lien or other interest in the Intellectual Property.

39. WHS is therefore entitled to a declaratory judgment that WHS owns the Intellectual Property and that GRG and NLFC have no interest therein.

**THIRD COUNT – TURNOVER OF PROPERTY**
**Pursuant to 11 U.S.C. § 542 and Bankruptcy Rule 7001 (GRG)**

40. The allegations set forth in the previous paragraphs are incorporated herein by reference as if set forth at length.

41. Section 542(a) of the Bankruptcy Code provides that "an entity, other than a custodian in possession, custody or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, … shall deliver such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."

8

42. Section 542(e) of the Bankruptcy Code provides that, "Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee."

43. GRG is (and was as of the Petition Date) in possession of estate property – specifically, the Line and the Intellectual Property. The Trustee sold such estate property to WHS pursuant to the Sale Order and APA.

44. Paragraph 18 of the Sale Order specifically authorizes WHS to bring an action for turnover pursuant to Bankruptcy Code section 542 against third parties such as GRG who refuse to surrender possession of Purchased Assets such as the Line and Intellectual Property and to resolve contested claims of ownership.

45. Accordingly, pursuant to Bankruptcy Code section 542 and Paragraph 18 of the Sale Order, GRG should be ordered to turn over the Line and Intellectual Property to WHS.

**FOURTH COUNT–PRELIMINARY INJUNCTION (All Defendants)**

46. The allegations set forth in the previous paragraphs are incorporated herein by reference as if set forth at length.

47. Pursuant to section 105(a) of the Bankruptcy Code and Rule 7065 of the Bankruptcy Rules, WHS seeks preliminary injunctive relief enjoining GRG, NLFC, and their respective agents and assigns from selling, assigning, transferring, encumbering, foreclosing upon, or otherwise disposing of (i) the Line and (ii) the Intellectual Property pending a final adjudication of this proceeding.

48. Section 105(a) provides that this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

49. Bankruptcy Rule 7065 provides that "Rule 65 F.R.Civ.P. applies in adversary proceedings, except that a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)." Fed. R. Bankr. P. 7065.[2]

50. A party is entitled to injunctive relief upon a showing of (i) reasonable probability of success in the litigation and (ii) more likely than not irreparable injury absent such relief. If a party succeeds in making those showings, the court then conducts an overall balancing in consideration of two additional factors: (iii) the possibility of harm to other interested persons from the grant or denial of the injunction, and (iv) the public interest.

51. As set forth in detail in this Complaint, there is a reasonable probability—in fact, there is a high probability—that WHS will succeed on the merits of its claims against GRG and NLFC.

52. As also set forth in detail in this Complaint, there is a real threat of irreparable harm if WHS is not granted an injunction. GRG has, through correspondence to WHS, made clear that GRG intends to dispose of the Line notwithstanding the pending ownership dispute, stating:

> ACCORDINGLY, NOTICE IS HEREBY GIVEN TO WHS AND THE TRUSTEE (COPIED HEREUNDER) THAT GRG INTENDS TO SELL THE LINE OR PORTIONS THEREOF, IN ONE OR MORE PRIVATE OR PUBLIC SALES.
>
> If any action is taken by WHS to interfere with GRG's rights in the Line, GRG reserves all rights to seek damages from WHS, including, but not limited to, for interference with prospective contractual relationships, conversion, trespass and/or any other remedies provided for or available to GRG, under statutory or other applicable law. WHS should govern itself accordingly.

---

[2] Rule 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security." Fed. R. Civ. P. 65(c).

4901-2570-6819, v. 1

53. WHS believes that GRG was given above-market pricing in the Purchase Orders through an undisclosed close connection between the Canoo representative that placed the Purchase Orders and a later-revealed significant GRG investor. In view of GRG's threat to proceed with a disposition of the Line in the face of a known good faith ownership dispute, and its prior concealment of material facts, WHS is concerned that GRG may take further action to hinder, delay, and frustrate WHS' recovery of the Line and Intellectual Property during the pendency of this adversary proceeding.

54. The balance of equities weighs in favor of the requested injunctive relief. Neither Defendant will suffer any true prejudice if the *status quo* is maintained while this litigation is pending, as neither Defendant has a legal right to the Line or Intellectual Property. Moreover, the requested injunction would only remain in effect until the Line and Intellectual Property have been adjudicated and, if WHS prevails, turned over to it.

55. The public interest would be served by granting the injunctive relief. GRG has failed to comply with the express terms of the Sale Order requiring it to turn over all Purchased Assets and flouted this Court's jurisdiction by insisting on its right to engage in self-help rather than present this ownership dispute to the Court.

56. Absent the injunctive relief requested herein, WHS will suffer manifest prejudice as it will be deprived of valuable property that it acquired pursuant to the Sale Order.

57. Finally, no security should be required pursuant to Bankruptcy Rule 7065 and Rule 65(c). WHS is seeking injunctive relief simply to prevent the diversion or dissipation of property that is the subject of this action pending a determination on the merits of WHS' claims. The harm to the Defendants as a result of any preliminary injunctive relief would be minimal, if any harm exists at all. No security bond is necessary or appropriate in this case.

58. Accordingly, WHS is entitled to the entry of a preliminary injunction on the terms requested herein.

## ATTORNEY'S FEES

59. Pursuant to the Direct T&Cs and/or applicable law, WHS is entitled to and hereby seeks an award against GRG of its reasonable attorney's fees and expenses incurred in connection with investigating, filing, and prosecuting this action.

## RESERVATION OF RIGHTS

60. During the course of this proceeding, WHS may learn through discovery or otherwise of additional claims or causes of action that are actionable under the provisions of the Bankruptcy Code or other applicable law, and reserves all rights to amend this original Complaint and for such amendments to relate back to the filing of this original Complaint.

## CONCLUSION

WHEREFORE, Plaintiff WHS Energy Solutions, LLC demands judgment in its favor and against Defendants GRG and NLFC, as follows:

a.  The entry of a judgment in favor of WHS and against GRG and NLFC declaring that WHS is the lawful owner of the Line and Intellectual Property and that neither GRG nor NLFC have any interest therein;

b.  The entry of a judgment in favor of WHS and against GRG compelling GRG, its agents and assigns to turn over to WHS the Line, the Intellectual Property, and all other property or recorded information in their possession, custody, or control that is subject to section 542 of the Bankruptcy Code and which constitutes "Purchased Assets;"

c.  The entry of a preliminary injunction prohibiting and enjoining GRG and NLFC and their respective agents and assigns from selling, assigning, transferring, encumbering, foreclosing upon or otherwise disposing of the Line and the Intellectual Property;

d.  An award of reasonable attorneys' fees and costs against GRG; and

e. Such additional relief as this Court deems just and equitable.

Dated: May 16, 2025

**CHIPMAN BROWN CICERO & COLE, LLP**

<u>/s/ *Robert A. Weber*</u>
Robert A. Weber (No. 4013)
Mark L. Desgrosseilliers (No. 4083)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Email:              Weber@chipmanbrown.com

*Counsel for WHS Energy Solutions, LLC*