Exhibit 4

# GENERAL TERMS AND CONDITIONS FOR THE PURCHASE OF AUTOMOTIVE COMPONENTS AND TOOLING

Last Updated: 02.23.22

1. Scope.

These General Terms and Conditions for the Purchase of Production Materials and Automotive Components (the "Terms") apply to all transactions conducted by Canoo Technologies Inc. and its Affiliates ("Canoo"), as the purchaser, from the supplier (the "Supplier") for the production supply of the goods and services specified in any purchase order(s) and/or statement(s) of work entered between the Parties. Canoo and Supplier shall each hereafter be referred to individually as a "Party" or collectively as the "Parties." "Affiliates" in relation to any Party shall mean any legal entity which directly or indirectly controls, is controlled by or is under common control with such Party. The term "control" shall mean the ability to vote more than 50% of the voting securities of any entity or otherwise having the ability to direct the management and polices of an entity.

2. Contractual Agreement.

(a) Offer and Acceptance.

Each statement of work and/or purchase order (each, a "Purchase Order") Canoo issues is its offer to purchase the goods ("Goods") and/or services ("Services") identified in such Purchase Order. Supplier will be deemed to have accepted a Purchase Order as issued by Canoo, where Supplier (i) commences work under the Purchase Order; (ii) accepts the Purchase Order in writing; (iii) or fails to object in writing within ten (10) days of issuance, whichever is earliest. Any Purchase Order is limited to and conditional upon Supplier's acceptance of these Terms exclusively. The Purchase Order is an offer or counteroffer from Canoo to purchase the Goods and/or Services described therein in accordance with these Terms, is not a confirmation or acceptance of any offer made by Supplier, and acceptance of this offer is expressly made conditional on assent to these Terms and the other provisions contained in the Purchase Order. These Terms are expressly incorporated into any Purchase Order(s), and these Terms, together with the Purchase Order, and any other duly signed supply agreement between the Parties (collectively, this "Agreement"), comprise the entire agreement between the Parties and supersede all prior or contemporaneous understandings, agreements, negotiations, representations and warranties, and communications, both written and oral. If Supplier timely objects to any Purchase Order or proposes additional or alternate Terms, any such changes will become part of the Agreement only if and to the extent Canoo and Supplier agree in writing, even if Supplier commences or has already commenced performance under the Purchase Order. These Terms prevail over any of Supplier's general or special terms and conditions of sale. Any reference in a Purchase Order to any offer or proposal made by Supplier is solely to incorporate the description or

specifications of Goods or Services in the prior proposal, but only to the extent that the description or specifications do not conflict with the description and specifications in the Purchase Order. Any additional or different terms proposed by Supplier, whether in Supplier's quotation, acknowledgement, invoice, general or special terms and conditions of sale or otherwise, are unacceptable to Canoo, are expressly rejected and objected to by Canoo, and will not become part of the Purchase Order, unless expressly accepted in a writing signed by Canoo. Notwithstanding anything to the contrary herein, if a written contract signed by both Parties is in existence covering the sale of the Goods and Services covered hereby, the terms and conditions of said contract shall prevail to the extent its terms are inconsistent with these Terms.

(b) Changes.

Canoo may, from time to time by notice to Supplier, make changes to the drawings, specifications, materials, packaging, testing, quantity, time or method of delivery or shipment, or similar requirements prescribed in the Agreement or in any Purchase Order. If such change is requested by Canoo, Supplier may request an equitable adjustment to the Price and times for performance as a result of Canoo's changes, which equitable adjustment shall be discussed in good faith by the Parties. Any claim by Supplier for equitable adjustment under this Section will be deemed waived unless asserted in writing within twenty (20) days from receipt by Supplier of the change order. Price increases or extensions of time for delivery will not be binding on Canoo unless evidenced by a purchase order change notice issued and signed by Canoo. No substitutions, changes or modifications of the ordered item will be made except upon Canoo's written authority.

3. Goods and Services.

(a) Packing and Shipping.

Supplier shall pack all Goods for shipment according to Canoo's instructions or, if there are no instructions, Supplier will pack and ship all Goods in accordance with industry standard practices. Unless otherwise set forth in any Purchase Order, the cost of packing, marking, insuring the Goods in transit and shipping the Goods shall be borne solely by Supplier. The Purchase Order number, Canoo's trade name, and Supplier's customs tariff number, if applicable, must appear on all shipping documents, shipping labels, bills of lading, air waybills, invoices, correspondence and any other documents pertaining to the Purchase Order.

(b) Place and Manner of Delivery.

Supplier shall deliver all Goods and Services in accordance with the date(s) specified in the Purchase Order ("Delivery Date") to Canoo's address specified in the Purchase Order (the "Delivery Point") during Canoo's normal business hours, or as otherwise instructed in writing by Canoo. Unless otherwise set forth in the Purchase Order, delivery of all Goods will be DDP Delivery Point, as that term is defined in

Incoterms 2020. Supplier acknowledges that time is of the essence with respect to Supplier's obligations and that the timely delivery of the Goods and Services is of critical importance to Canoo. If Goods and Services are not ready for delivery in time to meet Canoo's Delivery Date, except where the delay results from Canoo's actions, Supplier shall be responsible for any additional costs of any resulting expedited or other special transportation. If at any time Supplier has reason to believe that the delivery of any Goods or Services may not be made in strict conformity with applicable delivery schedules, Supplier shall immediately notify Canoo in writing and set forth the cause for the delay, so that the Parties can work together to reach an expeditious resolution.

(c) Title and Risk of Loss.

Title to, and risk of loss of and damage to, the Goods passes to Canoo upon delivery of such Goods at the Delivery Point. Prior to delivery at the Delivery Point, Supplier shall bear all risk of loss or damage to the Goods. In addition to any other insurance requirements set forth at Section 14, Supplier agrees to insure, and/or shall cause any carrier engaged by Supplier to insure, the Goods up to their full replacement value at all times during transport.

(d) Quantity.

If quantities are not specified in the Purchase Order, the quantity will be as reasonably determined by Canoo and stated in Canoo's firm releases issued to Supplier from time to time. In all events, Supplier shall use best efforts to meet Canoo's quantities and delivery schedules. Canoo may return over-shipments to Supplier at Supplier's expense. The Agreement is not exclusive and Canoo may purchase similar Goods and Services from third parties.

(e) Inspection.

Canoo or its representatives may, upon reasonable advance notice to Supplier, inspect production processes, audit records and conduct reasonable testing at any premises where Services are performed, or Goods are manufactured for the sole purpose of verifying Supplier's performance under the Agreement. Supplier may require appropriate confidentiality agreements in advance of any such visit. Canoo is not required to inspect Goods delivered or Services performed, and no inspection or failure to inspect will reduce or alter Supplier's obligations under the Agreement or reduce Canoo's remedies. Notwithstanding prior inspections, all Goods are subject to final inspection and approval at Canoo's plant or other place designated by Canoo and, notwithstanding any payment that may be made, no Goods are deemed accepted until such final inspection and approval. Canoo's inspection before, during or after manufacture and delivery will not constitute a waiver of the right of subsequent rejection by reason of any undiscovered or latent defect. Canoo may return rejected Goods at Supplier's expense. Supplier will not replace Goods returned as defective unless so directed by Canoo in writing.

4. Pricing and Payment Terms.

(a) The price of the Goods and Services is the price stated in the Purchase Order (the "Price"). Unless otherwise specified in the Purchase Order or required by law, the Price includes all packaging, transportation costs to the Delivery Location, insurance, customs duties, fees and applicable taxes, including, but not limited to, all sales, use or excise taxes. No increase in the Price is effective, whether due to increased material, labor or transportation costs or otherwise, without the prior written consent of Canoo.

(b) Supplier shall promptly after delivery of the Goods or Services submit correct and complete invoices to Canoo, along with any reasonably appropriate supporting documentation. Unless otherwise set forth in any Purchase Order, Canoo shall pay all properly invoiced amounts due to Supplier within forty-five (45) days of Canoo's receipt of such invoice, except for any amounts disputed by Canoo in good faith. Unless a Purchase Order specifically states otherwise, all payments for Goods or Services will be made in U.S. dollars. Without prejudice to any other right or remedy it may have, Canoo reserves the right to set off, at any time, any amount owing to it by Supplier against any amount payable by Canoo to Supplier. In the event of a payment dispute, Canoo shall deliver a written statement to Supplier on or before the date payment is due on the disputed invoice listing all disputed items and providing a reasonably detailed description of each disputed item and why it is disputed. Amounts not so disputed are deemed accepted and must be paid, notwithstanding disputes on other items, within the period set forth in this Section 4. The Parties shall seek to resolve all payment disputes expeditiously and in good faith. Supplier shall continue performing its obligations under this Agreement notwithstanding any such dispute, and no acceptance of performance, or delay in exercising any right, remedy, power or privilege, shall constitute a waiver of either Party's rights to seek any other right, remedy, power or privilege under this Agreement.

5. Warranties.

(a) Supplier's Warranties.

Unless a longer period is specified in the Agreement, the warranty period is the later of (i) the period for which Canoo warrants to end users the vehicles or products into which the Goods or Services are incorporated or (ii) five (5) years after delivery of such Goods or Services to Canoo. During the warranty period, Supplier warrants to Canoo that the Goods (a) will be free from defects in workmanship, design, and materials, (b) will comply with any applicable motor vehicle safety standards, including, without limitation, the Federal Motor Vehicle Safety Standards (the "FMVSS"), (c) will conform to the specifications, drawings, samples, and performance requirements provided by Canoo, (d) will be new, not used, refurbished or reconstituted; (e) will not infringe the proprietary rights of any third party, (f) will be merchantable and be fit for the use intended by Canoo; and (g) will comply and have been produced, processed, packaged, labeled, delivered and sold in conformity with all applicable

federal, state or other laws, administrative regulations and orders, including the Occupational Safety and Health Act of 1971 as amended from time to time. Supplier also warrants to Canoo that it will transfer to Canoo ownership and good title to Goods delivered and Services provided, free of all liens, encumbrances, and rights of third parties (except those created by Canoo). Supplier further warrants that (x) all Services furnished by Supplier will be performed in a good and workmanlike manner, in accordance with any established professional standards for similar services, and with the best practices in Supplier's industry, (y) any reports, drawings, advice, formula, protocol and other deliverables of such Services will comply with all applicable laws, regulations, codes and ordinances, and will be good and sufficient to enable Canoo to achieve the results therefor specified in the Agreement, and (z) none of such Services, reports, drawings, advice, formula, protocol or other deliverables of such Services, nor the use thereof by Canoo will infringe the proprietary rights of any third party. The foregoing warranties shall survive inspection, delivery and payment, and shall run in favor of Canoo, its successors and assigns and its customers, whether direct or indirect. Supplier will determine the particular purposes for which all Goods purchased by Canoo are required and will utilize its skill and judgment to select and furnish suitable Goods; Supplier acknowledges that Canoo is relying on Supplier to do so.

(b) Non-Conforming Goods.

In addition to all other rights and remedies provided under the Agreement, at law or in equity, if any Goods or Services do not conform to the warranties in this Section 5, Canoo shall have the right to: (i) reject the non-conforming Goods or Services; (ii) retain the non-conforming Goods or Services at an adjusted price, (iii) require Supplier, at Supplier's expense (including applicable shipping costs), to either repair or replace the non-conforming Goods or Services; or (iv) refund the amount paid by Canoo for the non-conforming Goods or Services. Canoo will also have the right to cancel any unshipped portions of the affected and any related order. Canoo will be reimbursed by Supplier for all of its costs and expenses in connection with the storage, handling, packing and/or transporting of any such defective or otherwise nonconforming Goods, and Supplier assumes all risk of loss or damage in transit to Goods returned by Canoo pursuant hereto. In addition, Supplier shall implement, at its expense, containment, inspection, sorting, and other quality assurance procedures if Canoo reasonably determines (through statistical sampling or other quality assessments) that a substantial quantity of incoming Goods do not conform to the warranties in this Section 5. To the full extent possible, pursuant to the Canoo SQM, Canoo will provide Supplier with access to any available warranty data related to the Goods and any available field-returned Goods.

(c) Recalls.

This Section 5(c) applies to any voluntary or government-mandated recall by Canoo to remedy any alleged defect (each a "Recall"). If any Recall results in whole or in part from a failure of the Goods to

conform to the Supplier warranties in this Section 5 during the warranty period, in addition to all other rights or remedies which Canoo may have under this Agreement or at law, Supplier shall be liable for all costs and damages resulting from such Recall, provided, as a condition precedent to Supplier's liability under this Section 5(c), Canoo must: (i) notify Supplier as soon as practicable after Canoo learns that a Recall being considered implicates the Goods; (ii) provide Supplier with any available performance evaluations, accident reports, engineering investigations, and other data relating to the potential Recall, and (iii) provide Supplier a reasonable opportunity to participate in inquiries and discussions among Canoo, its customer, and governmental agencies regarding the need for and scope of the Recall.

6. Product Liability.

(a) Indemnification.

Supplier will defend, indemnify and hold harmless Canoo from and against third-party claims or demands for injury or death to persons, property damage, economic loss, and any other damages, losses, costs, and expenses (including reasonable legal fees), regardless of whether the claim or demand arises under tort, contract, strict liability, or other legal theories resulting or arising from: (i) Supplier's defective design or manufacture of Goods or provision of Services; (ii) the failure of the Goods to comply with the Supplier's warranties at Section 5; (iii) Supplier's delivery of non-conforming Goods or Services; (iv) Supplier's failure to comply with applicable law, including, without limitation, the FMVSS, or (v) negligent acts or omissions in its performance under the Agreement.

(b) Procedure.

Canoo will notify Supplier promptly after Canoo becomes aware of the basis for a claim for which Canoo is seeking indemnification under this Agreement, provided that the failure to give such notice shall not, however, relieve Supplier of its indemnification obligations, except and only to the extent that Supplier forfeits rights or defenses by reason of such failure. Canoo, may, at Canoo's option, assume and control the defense of the claim, and in such case, Supplier shall indemnify Canoo from and against losses, damages, costs and expenses (including attorneys' fees, court fees, and other defense costs) incurred by Canoo in defending such claims. If Canoo decides not to assume the defense of a claim, then Supplier shall assume and control the defense of such claim, at Supplier's expense and by Supplier's own counsel (which counsel shall be subject to the approval of Canoo, which approval will not be unreasonably withheld, conditioned, or delayed); provided that Canoo shall have the right to participate in the defense of any claims with counsel selected by it at Canoo's expense. Canoo and Supplier shall cooperate with each other in all reasonable respects in connection with the defense of any such claims. Notwithstanding any other provision of this Agreement, Supplier shall not consent to the entry of any judgement or enter into any settlement of any claims without the prior written consent of Canoo.

7. Intellectual Property Rights.

(a) Canoo's Intellectual Property.

Canoo does not transfer to Supplier any patent, trade secret, trademark, service mark, copyright, mask work, or other intellectual property right ("Intellectual Property Right") of Canoo in or to any information, documents, or property that Canoo makes available to Supplier under the Agreement, other than the limited right to use Canoo's Intellectual Property Rights only as necessary to produce and supply Goods and Services to Canoo pursuant to a Purchase Order.

(b) Supplier's Intellectual Property.

Except as stated in this Section 7(b) or as otherwise set forth in any duly signed agreement between the Parties, Supplier does not transfer to Canoo any Intellectual Property Right of Supplier related to the Goods or Services, other than the right to use such Intellectual Property Right of Supplier in conjunction with the use of any Goods manufactured by or for Canoo for the manufacture, assembly, production and sale of Canoo vehicles, whether by incorporating, modifying or assembling Goods purchased from Supplier into component parts or directly into Canoo vehicles. Supplier hereby grants to Canoo a non-exclusive, perpetual, fully paid, worldwide right and license, with rights to grant sublicenses to Affiliates, to use Supplier's Intellectual Property Rights in the manufacture, assembly and production of Canoo vehicles, and to sell Canoo vehicles and any related vehicle components to the public ("Canoo Production"). Contingent upon this Agreement being breached by Supplier and subsequently terminated by Canoo, Supplier hereby grants to Canoo a non-exclusive, perpetual, fully paid, worldwide right and license, with rights to grant sublicenses, to the extent reasonably necessary to continue Canoo Production, including, without limitation, to enable Canoo to obtain Good or Services as previously acquired from Supplier from alternate sources for use in Canoo Production.

(c) Infringement.

Supplier warrants that any Goods and the use of any Goods for their intended purpose or making, having made, selling, offering to sell, importing, or using any good made by using the Goods for their intended purpose, will not infringe any Intellectual Property Right of any third party. Supplier shall hold harmless, defend, and indemnify Canoo, its Affiliates, their respective customers, distributors and dealers, and their respective customers, from and against any and all claims made against any of them that any Services or Goods, including use of any Goods for their intended purpose or making, having made, selling, offering to sell, importing, or using any Goods for its intended purpose, infringes any Intellectual Property Rights of any third party. Supplier shall pay all costs and expenses (including reasonable attorney's fees) that are incurred or sustained by reason of any such claim.

(d) If a claim under this Section 7 results, or is likely to result, in an injunction or other order that would prevent Supplier from supplying or Canoo from using Goods for their intended purpose, Supplier will, at its expense, either: (i) secure a license of the Intellectual Property Right that permits Supplier to continue supplying the Goods to Canoo, or (ii) modify the Goods so that they become non-infringing, so long as the modification does not alter in any substantial manner the operation, purpose or performance of the Goods for their intended purpose, or (iii) replace the Goods with non-infringing alternative Goods that do not alter in any substantial manner the operation, purpose or performance of the Goods for their intended purpose.

(e) Without prior written consent, Supplier shall not use or permit the use of Canoo's or its Affiliates' trademarks in the description or marketing of products produced by Supplier, nor shall Supplier advertise or publish that Supplier has contracted to furnish Goods or Services to Canoo pursuant to this Agreement.

8. Property and Tooling.

(a) All production supplies, tooling (including fixtures, gauges, jigs, patterns, castings, cavity dies and molds, with all related appurtenances, accessions, and accessories) "Tooling", and all other deliverables, data, inventions (whether or not patentable), industrial designs, technical information, know-how, processes of manufacture and other intellectual property and information, which has been either: (i) provided by Canoo; or (ii) created, developed, conceived or first reduced to practice by or on behalf of Supplier to produce the Goods or Services, and for which Canoo has agreed to reimburse Supplier, shall be and remain the sole and exclusive property of Canoo ("Canoo Property") and shall be held by Supplier on a bailment basis until such time as it is transferred to Canoo in accordance with this Section 8 (Property and Tooling); provided that, to the extent permitted by law, all of the Canoo Property consisting of copyrightable subject matter is "work made for hire" as defined in the Copyright Act of 1976 (17 U.S.C. § 101), and such copyrights are therefore owned by Canoo, and to the extent that the foregoing does not apply, Supplier hereby irrevocably assigns to Canoo, for no additional consideration, Supplier's entire right, title, and interest in and to all Intellectual Property Rights in the Canoo Property, including the right to sue, counterclaim, and recover for all past, present, and future infringement, misappropriation, or dilution thereof, and all rights corresponding thereto throughout the world.

(b) Production Tool Order.

If Canoo issues a Production Tool Order (PTO) in connection with the Production Purchase Order, Supplier will design and fabricate, rework, or acquire, and in all cases install Tooling that fully conforms to the specifications and other requirements of the PTO.

(c) Tool Order Purchase Price.

Unless a PTO is issued on a fixed price basis, the price of the Tooling will not exceed the lower of: (a) the price specified on the Production Tool Order; (b) the Supplier's actual costs of acquiring the Tooling from a toolmaker without markup; or (c) the Supplier's actual costs of fabrication of the Tooling in accordance with Canoo's guidelines provided to the Supplier.

(d) Tooling Capacity.

The Tooling must be capable of producing the Volume Projections for the Goods during the life of the part as well as satisfying the requirements for Service Parts under Section 13.

(e) Tooling Completion and Payment.

Unless otherwise stated in a separate Tooling or Development Agreement, Supplier, at its own expense, will manufacture the requisite number of sample Goods using the Tooling in order to successfully complete Canoo's Production Part Approval Process (PPAP) and submit the Part Submission Warrant (PSW). The Tooling will be completed when the necessary samples have been submitted and approved by Canoo. Supplier has no claim for payment until the Tooling is completed and the Part Submission Warrant and any other necessary documentation have been submitted.

(f) Status Reports.

Canoo, at any time, may ask Supplier to provide status reports on the construction or acquisition of the Tooling. Each status report will identify the Tooling, identify any subcontractors working on the Tooling, state the percentage of completion of the Tooling, and state the percentage of sunk costs already expended.

(g) Notice of Potential Delay in Completion.

If, at any time, Supplier believes that the Tooling might not be completed by the completion date specified on the Production Tool Order, Supplier will notify Canoo by Written Notice as soon as practicable. Sending this notice will not relieve Supplier of either its obligation to complete the Tooling on the completion date or its liability for any additional costs incurred by Supplier or Canoo as a result of any delay, unless Canoo agrees otherwise in a Written Notice.

(h) Tooling Warranty.

The Supplier warranty for Tooling is the same as for the Goods under Section 5.

(i) Ownership of Tooling.

Canoo becomes the sole owner of all Tooling as soon as it is fabricated or acquired by Supplier. Canoo takes title to the Tooling even if Supplier has not yet been paid for the Tooling. Ownership by Canoo will

not relieve Canoo of its obligation to pay for the Tooling nor affect any claim of Supplier for payment under a Production Tool Order.

(j) Risk of Loss.

Supplier shall bear the risk of loss of and damage beyond reasonable wear and tear to any Tooling Canoo Property and shall adequately insure Canoo Property for its full replacement value at Supplier's cost, with loss payable to Canoo, at all times while the Canoo Property is in Supplier's possession or under its control.

(k) Location of Property.

At all times while in Supplier's possession or under its control, the Canoo Property shall also be properly housed and maintained by Supplier, at its expense, at the location of Supplier approved by Canoo in writing (the "Supplier Location") and shall be clearly marked as Canoo Property. The Canoo Property shall not be used by Supplier for the production of Goods or Services to supply to third parties absent Canoo's prior written consent. Any Canoo Property must be kept at the Supplier Location. If the Canoo Property is to be attached to real estate, Supplier shall provide Canoo with a disclaimer or disclaimers of any interest in the Canoo Property and shall also ensure that the equipment may be removed without damage to the real estate. Supplier shall not use the Canoo Property for any purpose other than Supplier's performance under any Purchase Order with Canoo.

(l) Release and Return.

Upon Canoo's written request, the Canoo Property shall be released to Canoo or delivered by Supplier to Canoo, pursuant to Canoo's written instructions. Supplier is responsible for labor and other costs of dismounting, dismantling, staging, and loading the Tooling for removal. Supplier will cooperate with Canoo in removing the Tooling from the location of the Supplier or subcontractor.

(m) Waiver of Liens.

To the fullest extent permitted by applicable law, Supplier waives all rights to any liens that Supplier may otherwise have on any Canoo Property.

(n) Inspection Rights.

Canoo shall have the right, upon reasonable notice to Supplier and at reasonable times, to (a) inspect the Canoo Property, (b) observe its use at the Supplier Location, and (c) freely access the Supplier Location for such purposes. Canoo may enter the Supplier Location and remove the Canoo Property without notice to Supplier and without liability if, in the reasonable opinion of Canoo, the Canoo Property is being improperly stored, used or maintained. Supplier shall not remove, or permit the removal of, the Canoo Property from the Supplier Location without the prior written consent of Canoo.

(o) Supplier expressly permits Canoo to file Uniform Commercial Code ("UCC") financing statements in any appropriate filing office reflecting Canoo's ownership of the Canoo Property. Supplier also expressly permits Canoo to make any other notification necessary to protect Canoo's interest in the Canoo Property (such as those contemplated by UCC § 9-324) to any person or entity that has filed a UCC financing statement that, in Canoo's sole discretion, may evidence a conflicting interest in the Canoo Property. Supplier agrees to (i) maintain the Canoo Property free and clear of all liens and encumbrances of any nature whatsoever and (ii) indemnify and hold harmless Canoo from and against any loss or damage caused by any such liens or encumbrances placed upon any Canoo Property. Supplier may not assign, sell, transfer, or attempt to assign, sell or transfer any Canoo Property to any person or entity, without Canoo's prior written consent.

**(p) CANOO IS PERMITTING SUPPLIER TO USE THE CANOO PROPERTY ON AN "AS IS, WHERE IS" AND "WITH ALL FAULTS" BASIS.**

Supplier shall be responsible for, shall timely pay, and shall indemnify Canoo against and hold Canoo harmless from, all taxes, fees, and other charges charged by any governmental or taxing agency or authority on or relating to the Canoo Property, including Supplier's use of the Canoo Property. Canoo shall not be responsible or liable for any loss, damage, expense or claim incurred by Supplier arising out of Supplier's use of, or otherwise related to, the Canoo Property.

(q) Restricted Use of Tooling.

Supplier has the obligation to use the Tooling solely in the production of the Goods. Supplier will not use the Tooling for any purpose other than as provided under these terms including the for the production, manufacture, sale, or design of after, market parts.

(r) Disposition of Tooling.

Supplier may send a written notice requesting Canoo to either accept the return of the Tooling or permit its disposal by the Supplier in accordance with terms to be negotiated in good faith in the event the Supplier continues to provide Service Parts or Component Parts after the period required in Section 13, but there have not been any releases for the Service Parts or Component Parts for at least two years.

9. Confidential Information.

(a) Definition. Supplier acknowledges that, during the course of its performance under this Agreement, it will have access to certain non-public information that is considered highly valuable and confidential by Canoo, including without limitation: (a) the existence and terms of this Agreement; (b) trade secrets, patents and patent applications; (c) information, ideas, techniques, specifications, sketches, drawings, works of authorship, models, inventions, know-how, processes, apparatuses, equipment, algorithms, software programs, software source

documents, and formulae related to the business operations and strategies, customers, investors, pricing, sourcing, personnel or operations of Canoo, its Affiliates, or its suppliers or customers, in each case whether spoken, written, printed, electronic, or in any other form or medium; and (d) all other information that Supplier knew, or reasonably should have known, was the confidential information of Canoo (collectively, the "Confidential Information"). Notwithstanding the foregoing, any confidential information that Supplier develops in connection with a Purchase Order or with reference to Canoo's Confidential Information, including but not limited to, any Goods, shall be Canoo Property, shall be the Confidential Information of Canoo and shall subject to the terms and conditions of this Section9 (Confidential Information).

(b) Obligations.

Supplier agrees to: (a) treat all Confidential Information as strictly confidential; (b) not disclose Confidential Information or permit it to be disclosed, in whole or part, to any third party without the prior written consent of Canoo; and (c) not use any Confidential Information for any purpose except as required in the performance of its obligations under the Agreement. Supplier shall notify Canoo immediately in the event Supplier becomes aware of any loss or disclosure of any Confidential Information. Upon Canoo's request, Supplier shall promptly return all documents and other materials received from Canoo, including any Canoo Property and Confidential Information. In addition to all other relief afforded under this Agreement or at law, Canoo shall be entitled to injunctive relief for any violation of this Section 9.

(c) Exclusions.

Confidential Information shall not include information that: (a) is or becomes generally available to the public other than as a result of Supplier's breach of this Agreement; (b) is obtained by Supplier on a non-confidential basis from a third-Party that was not legally or contractually restricted from disclosing such information; or (c) was or is independently developed by Supplier without use of or reference to any Confidential Information. Nothing herein shall be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation, or order. Supplier agrees to provide prompt written notice of any such order to an authorized officer of Canoo sufficiently in advance of making any disclosure to permit Canoo the option to contest the order or to seek confidentiality protections, as determined in Canoo's sole discretion.

10. Term and Termination.

These Terms shall remain in effect so long as Purchase Orders hereunder remain in effect. Purchase Order shall remain in effect for the term specified in such Purchase Order provided that Canoo may earlier

terminate any Purchase Order: (i) for any reason upon reasonable notice of no less than thirty (30) days; (ii) pursuant to a Supplier Default under Section 12 (Default and Remedies); or (iii) in the event of a Force Majeure Event pursuant to Section 20 (Force Majeure).

11. Transition of Supply.

Upon the expiration or earlier termination of any Purchase Order, for any reason, or during any period of Supplier Default, Supplier agrees to take all actions reasonably necessary to ensure that there is no interruption in the supply of Goods or Services to Canoo. As part of such obligation, Supplier agrees to take any such actions as may be reasonably requested by Canoo to accomplish the transition from Supplier to an alternative supplier. Without limiting the generality of the foregoing, Supplier shall, upon reasonable written request by Canoo: (a) provide all notices necessary or desirable for Canoo to resource the Purchase Order to an alternative Supplier; (b) promptly provide all requested information and documentation regarding and access to Supplier's manufacturing process, including on-site inspections, bill-of-material data, tooling and process detail and samples of Goods and components; (c) provide a sufficient bank of Goods covered by the Purchase Order to ensure the orderly transition to any alternative Supplier chosen by Canoo; (d) provide to Canoo all Canoo Property in good condition, reasonable wear and tear excepted; (e) assign to Canoo any or all supply contracts or purchase orders for raw material or components relating to the Purchase Order; and/or (f) sell to Canoo, at fair market value, any or all tooling and Goods inventory relating to the Purchase Order, to the extent not already paid by Canoo. The term "alternative supplier" expressly includes, but is not limited to, an Affiliate of Canoo.

12. Default and Remedies.

(a) Events of Default.

Time is of the essence and, subject to Section 18 (Force Majeure), Supplier will be in default under this Agreement if it: (i) fails to perform any obligation under this Agreement, including any Purchase Order; (ii) fails to provide Canoo with adequate and reasonable assurance of Supplier's ability to perform any obligation under any Purchase Order upon reasonable written request by Canoo; (iii) threatens not to deliver Goods or Services in connection with any Purchase Order or is unable to provide the Goods or Services on commercially reasonable terms pursuant to the Agreement; (iv) enters or offers to enter into any transaction which includes a sale of a substantial portion of its assets used for production of the Goods or supply of the Services that would result in a change in control of Supplier; (v) admits in writing to its inability to pay its debts as they become due, commences a bankruptcy, insolvency, receivership, or similar proceeding, or makes a general assignment for the benefit of creditors; or (vi) becomes a debtor in a bankruptcy, insolvency, receivership, or similar proceeding commenced by a third party (each, a "Supplier Default"). Canoo will be in default under this Agreement only for non-payment for Goods or Services which are sixty (60) or more days

past due, or as otherwise set forth in any Purchase Order, and then only if: (i) Supplier provides Canoo written notice specifying the amounts past due; and (ii) Canoo, within sixty (60) days after the date that Canoo receives any such notice, does not either: (A) pay the past due amounts; or (B) notify Supplier that the amounts claimed to be unpaid are disputed by Canoo.

(b) Remedies.

Supplier acknowledges that, in entering into any Purchase Order, Canoo depends upon Supplier for the timely development and production of the Goods and Services, for the supply of the Goods and Services, and, as a result, for the production of Canoo vehicles in accordance with the schedules contemplated by the Purchase Order. Supplier further recognizes that failure to timely and fully perform its obligations hereunder may affect the viability of the manufacturing of the vehicles, and that Canoo may suffer substantial losses and damages which cannot be measured solely in monetary terms. Supplier, therefore, expressly agrees that Canoo shall have the right to compel specific performance of any Purchase Order by Supplier, or alternatively, in Canoo's discretion, to terminate the Purchase Order upon written notice to Supplier in the event of a Supplier Default. In any such event, Canoo may cancel the Purchase Order, in whole or in part, without any liability, except for any payment due for Goods or Services delivered and accepted through the date of termination. Upon any such termination, Canoo shall also have the right to take title to and possession of Canoo Property in Supplier's possession and all or any other part of work performed by Supplier or paid for by Canoo through the date of termination. Canoo shall also be entitled to recover from Supplier all losses, expenses and damages of every kind and nature, including, but not limited to, actual out of pocket costs, attorney's fees, court costs, incidental and consequential damages and lost profits, which Canoo may suffer as a result of any Supplier Default. The remedies set forth in this Section 12(b) shall be cumulative and in addition to all other rights and remedies otherwise available in the Agreement or at law.

13. Service and Replacement Parts.

(a) Supplier shall sell Goods to Canoo as ordered and released by Canoo for use as production and as service and replacement parts for Canoo and its customers. If the Goods are systems or modules, Supplier shall sell to Canoo, as ordered by Canoo, the system or module or the components or parts that comprise the system or module. The prices for the components or parts shall not, in the aggregate, exceed the price of the system or module less assembly costs.

(b) Supplier will supply past model year service and replacement parts to Canoo for up to 15 years following the end of production of the current model year for the Goods. If Canoo has a legal obligation to make the service or replacement parts available for a longer period, Canoo will inform Supplier and Supplier shall supply the service or replacement parts for this longer time period.

(c) Supplier shall sell the replacement or service parts at prices based on the most recent pricing specified under the Purchase Order, taking into account actual, documented differences in the cost of materials, packaging and costs of production after any Canoo current model purchases have been completed, and as mutually and reasonably agreed by the parties. For past production service parts, the price shall be the price that was in effect during production for a period of five (5) years, thereafter the parties shall negotiate in good faith the price for the remaining 10 years or enter into a lifetime buy.

(d) At Canoo's request, Supplier shall make service literature and other reasonable materials available at no additional charge to Canoo or its customers to support Canoo's service part sales activities. Supplier's obligations under this Section 13 shall survive termination or expiration of the Purchase Order, for any reason.

14. Insurance.

At all times, Supplier will maintain and upon request furnish to Canoo: (a) Worker's Compensation Insurance as required by applicable law including Employer's Liability coverage "B" (or stop gap coverage) in the amount of $1,000,000; (b) Commercial General Liability Insurance in at least the amount of $5,000,000 combined single limits per occurrence; (c) Vehicular Liability Insurance in at least the amount of $1,000,000; and (d) Umbrella coverage in the amount of $5,000,000. Any shortfall in the above coverages can be made up for by the umbrella policy so long as proof is provided in writing that the umbrella covers that policy. All policies must be undertaken with financially sound and reputable insurers. Upon Canoo's request or prior to commencement of any Services or delivery of any Goods, Supplier shall provide Canoo with a certificate of insurance from Supplier's insurers evidencing the insurance coverage specified in these Terms. The certificate of insurance shall name Canoo as an additional insured. Supplier shall provide Canoo with at least thirty (30) days' advance written notice in the event of a cancellation or material change in Supplier's insurance policy(ies.) Except where prohibited by law, Supplier shall require its insurers to waive all rights of subrogation. Supplier must also require all Permitted Subcontractors to comply with all insurance requirements of these Terms. Nothing in this Section 14 shall be construed as or act as a cap on liability or otherwise limit any damages which Canoo may otherwise be entitled to seek under this Agreement or at law.

15. Dispute Resolution. (

a) Negotiation and Mediation.

Canoo and Supplier will first endeavor to resolve through good faith negotiations any dispute arising under the Agreement, whether through duly authorized representatives for each Party or through formal, non-binding mediation.

(b) Binding Arbitration.

If the Parties cannot resolve any dispute pursuant to Section 15(a) within a reasonable period of time, except as set forth in Section 15(c), any claim or controversy arising out of or relating to this Agreement shall be settled by binding arbitration before a single, neutral arbitrator in Dallas Texas, in accordance with the Commercial Arbitration Rules of JAMS, which can be found at https://www.jamsadr.com, and which are incorporated herein by reference. Any judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction. Each party shall pay the fees of its own attorneys, the expenses of its witnesses and all other expenses connected with presenting its case; however, Canoo and Supplier agree that, except as may be prohibited by law. Other costs of the arbitration, including the cost of any record or transcripts of the arbitration, administrative fees, the fee of the sole arbitrator, and all other fees and costs, shall be borne equally by the Parties.

(c) Injunctive Relief.

Notwithstanding anything to the contrary set forth in this Section 15, each party has the right at any time, whether before or during mediation or arbitration, to seek and obtain from the appropriate court, provisional remedies or other equitable or non-monetary relief such as attachment, claim and delivery, preliminary injunction, or replevin, to avoid irreparable harm, maintain the status quo or preserve the subject matter of the arbitration and including, but not limited to, any claim for injunctive relief by Canoo to enforce its rights and the obligations of Supplier under this Agreement.

16. Customs.

Transferable credits or benefits associated with Goods purchased, including trade credits, export credits, or rights to the refund of duties, taxes, or fees, belong to Canoo unless otherwise prohibited by applicable law. Supplier will provide Canoo with all information and records relating to the Goods necessary for Canoo to (i) receive these benefits, credits, and rights, (ii) fulfill any customs obligations, origin marking or labeling requirements, and certification or local content reporting requirements, (iii) claim preferential duty treatment under applicable trade preference regimes, and (iv) participate in any duty deferral or free trade zone programs of the country of import. Supplier will obtain all export licenses and authorizations and pay all export taxes, duties, and fees unless otherwise stated in the Agreement, in which case Supplier will provide all information and records necessary to enable Canoo to obtain those export licenses or authorizations.

17. Audit Rights.

If requested by Canoo, the Supplier will permit Canoo to, and will ensure that the Permitted Subcontractors permit Canoo to, examine all pertinent documents, data and other information relating to the Goods or Services, the Supplier's obligations under any Purchase Order, or any payment made to the Supplier during the term of this Agreement and for a period of twelve (12) months thereafter. Canoo further reserves

the right to conduct inspections in accordance with Section 3(e). Any examination under this Section17 will be conducted during normal business hours and upon advance written notice to the Supplier. Supplier will use its best efforts to permit Canoo to obtain from Permitted Subcontractors the information and permission to conduct the reviews specified in this Section17, regardless of any other right Canoo may have to that information or facilities.

18. Compliance with Law.

Supplier shall comply with all applicable laws and regulations and shall obtain all applicable permits and licenses required in connection with its obligations under this Agreement. Without limiting the generality of the foregoing, Supplier shall: (i) comply fully with all applicable data protection, privacy, and similar laws and regulations of the United States of America, the European Union, and other countries; (ii) comply fully with all applicable export laws and regulations of the United States of America, the European Union, and other countries, including, but not limited to, the International Traffic in Arms Regulations ("ITAR"), the Export Administration Regulations ("EAR"), and the regulations administered by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") (collectively "U.S. export and import control laws and regulations"), and Supplier shall promptly notify Canoo if any Good (including any technical data) provided hereunder is subject to U.S. export and import control laws and regulations; and (iii) comply fully with all applicable anti-corruption and anti-bribery laws, including, but not limited to, the U.S. Foreign Corrupt Practices Act, the UK Bribery Act, and the anti-corruption laws, regulations and policies of the home country of Supplier (hereinafter "Anti-Corruption Requirements"). Supplier warrants and represents that no compensation payable hereunder has been used, nor will be used, for any activity or purpose where a reasonable belief exists that the Anti-Corruption Requirements would be violated or that Supplier or Canoo would be exposed to liability under any of the Anti-Corruption Requirements. Supplier also warrants and represents that none of its principals, officers, directors, shareholder, employees, or agents has performed or will perform any act related to or arising out of this Agreement with Canoo that would constitute a violation, or present a credible risk of a violation, of the Anti-Corruption Requirements. Supplier will provide Canoo with material safety data sheets regarding the Goods and, upon Canoo's reasonable request, will provide Canoo with any other information reasonably required in order to comply with applicable laws. Supplier assumes all responsibility for shipments of Goods requiring any government import clearance. At Canoo's request, Supplier shall certify in writing its compliance with any or all of the foregoing. Canoo requires strict compliance with this provision and has the right to immediately terminate any Purchase Order or this Agreement if there is a breach hereof.

19. Waiver.

No waiver by Canoo of any of the provisions of this Agreement is effective unless explicitly set forth in writing and signed by Canoo.

No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement operates, or may be construed, as a waiver thereof. No single or partial exercise of any right, remedy, power or privilege hereunder precludes any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

20. Force Majeure.

Neither Party shall be liable to the other for any delay or failure in performing its obligations under this Agreement to the extent that such delay or failure is caused by an event or circumstance that is beyond the reasonable control of that Party, without such Party's fault or negligence, and which by its nature could not have been foreseen by such Party or, if it could have been foreseen, was unavoidable ("Force Majeure Event"). Force Majeure Events include, but are not limited to, acts of God or the public enemy, floods, fire, earthquakes, explosion, epidemic, war, invasion, terrorist acts, riots or embargoes. Supplier's economic hardship or changes in market conditions are not considered Force Majeure Events. Supplier shall use all diligent efforts to end the failure or delay of its performance, ensure that the effects of any Force Majeure Event are minimized and resume performance under this Agreement promptly upon the conclusion of any Force Majeure Event. If a Force Majeure Event prevents Supplier from carrying out its obligations under this Agreement for a continuous period of more than sixty (60) days, Canoo may terminate this Agreement immediately by giving written notice to Supplier. Supplier will allocate any limited supply of the Goods covered by the Agreement to the fulfillment of its obligations under the Agreement before allocating any of such supply to its other customers or to Supplier's use in its own operations.

21. Assignment.

Supplier shall not assign, transfer, delegate or subcontract any of its rights or obligations under this Agreement without the prior written consent of Canoo. Any purported assignment or delegation in violation of this Section 21 shall be null and void. Notwithstanding the foregoing, no assignment or delegation shall relieve Supplier of any of its obligations hereunder. Canoo may at any time assign or transfer any or all of its rights or obligations under this Agreement without Supplier's prior written consent to any Affiliate or to any person acquiring all or substantially all of Canoo's assets. In the event that Supplier receives Canoo's prior written consent for the use of a subcontractor (such permitted subcontractors, the "Permitted Subcontractors"): (a) Supplier remains responsible to Canoo for the obligations, acts and omissions of each Permitted Subcontractor and for the fees, expenses, and other compensation payable to each Permitted Subcontractor (it being understood that Canoo shall owe no duty or obligation to any subcontractor); (b) Supplier unconditionally guarantees to Canoo the complete and timely performance of all of each Permitted Subcontractor's obligations in connection with performance of this Agreement; (c) Supplier shall cause each Permitted Subcontractor to be bound by and comply with all requirements, provisions and obligations of this Agreement; (d) Supplier shall require each

Permitted Subcontractor to enter into a confidentiality agreement regarding the Confidential Information, the terms of which are at least as rigorous as Supplier's obligations under this Agreement; and (e) Supplier agrees upon Canoo's reasonable request to cease using a Permitted Subcontractor.

22. Relationship of the Parties.

The relationship between the Parties is that of independent contractors. Nothing contained in this Agreement shall be construed as creating any agency, partnership, joint venture or other form of joint enterprise, employment or fiduciary relationship between the Parties, and neither Party shall have authority to contract for or bind the other Party in any manner whatsoever.

23. No Third-Party Beneficiaries.

This Agreement is for the sole benefit of the Parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

24. Governing Law.

ALL MATTERS ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL NOT BE GOVERNED BY THE PROVISIONS OF THE UNITED NATIONS CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS OR THE UNITED NATIONS CONVENTION ON THE LIMITATION PERIOD IN THE INTERNATIONAL SALE OF GOODS, AS AMENDED, BUT INSTEAD ARE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF TEXAS WITHOUT GIVING EFFECT TO ANY CHOICE OR CONFLICT OF LAW PROVISION OR RULE (WHETHER OF THE STATE OF TEXAS OR ANY OTHER JURISDICTION) THAT WOULD CAUSE THE APPLICATION OF THE LAWS OF ANY JURISDICTION OTHER THAN THOSE OF THE STATE OF TEXAS.

25. Notices.

All notices, requests, consents, claims, demands, waivers and other communications hereunder (each, a "Notice") shall be in writing and addressed to the Parties at the addresses set forth on the face of the Purchase Order or to such other address that may be designated by the receiving Party in writing. All Notices shall be delivered by personal deliver, nationally recognized overnight courier (with all fees pre-paid), facsimile (with confirmation of transmission) or certified or registered mail (in each case, return receipt requested, postage prepaid). Except as otherwise provided in this Agreement, a Notice is effective only (a) upon receipt of the receiving Party, and (b) if the Party giving the Notice has complied with the requirements of this Section.

26. Severability.

If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

27. Survival.

Provisions of these Terms which by their nature should apply beyond their terms will remain in force after any termination or expiration of this Agreement including, but not limited to, the following provisions: Section 5 (Warranties), Section 6 (Product Liability), Section 7 (Intellectual Property Rights), Section 9 (Confidential Information), Section 12 (Default and Remedies), Section 13 (Service and Replacement Parts), Section 15 (Dispute Resolution), Section 17 (Audit Rights), Section 18 (Compliance with Law), Section 25 (Notice) and Section 27 (Survival).